IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| OWNERS INSURANCE COMPANY, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:05-CV-0475-JOF |
| CHADD'S LAKE HOMEOWNERS : | |
| ASSOCIATION, INC., et al., : | |
| : | |
| Defendants. : | |

## OPINION AND ORDER

This matter is before the court on Plaintiff's motion for summary judgment [38-1].

**I.   Background**

    **A.   Procedural History**

Plaintiff, Owners Insurance Company, filed suit against Defendant William Rhodes, Inc., on February 18, 2005, seeking a declaratory judgment that the insurance company had no duty to defend or indemnify Rhodes under its policy with Owners. Plaintiff also filed suit against Defendants Chadd's Lake Homeowners Association, Inc.; Ali Barzegar, Mahnaz Barzegar; Escex Company, Inc., Reza Tabatabai; Zahra Fakhrabadi; Perfect Design, Inc.; Total Development, Inc.; Billy Gerrell Grading, Inc.; and Veco & Associates, Inc. For reasons that are explained below, this litigation in reality concerns only Owners and William Rhodes, Inc.

In fact, the Clerk of the Court entered default as to Ali Barzegar, Billy Gerrell Grading, Inc., Chadd's Lake Homeowners Association, Inc., Escex Company, Inc., and Total Development, Inc., on September 16, 2005, and against Mahnaz Barzegar on September 19, 2005.

The background of this suit involves the construction of homes in the Chadd's Lake subdivision of Marietta, Georgia. In November 2000, Ali and Mahnaz Barzegar and Reza Tabatabai and Zahra Fakhrabadi (the Tabatabais), began construction on residential homes in Chadd's Lake. The Barzegars formed a corporation called Escex Company, Inc., to construct their home. The Tabatabais hired William Rhodes, Inc., to construct theirs.[1] Thereafter, the Chadd's Lake Homeowners Association became concerned with the water condition of the body of water from which the neighborhood takes its name. The Association owns and has responsibility for the maintenance of Chadd's Lake. An engineering firm was hired to investigate the situation and concluded that a substantial amount of silt and sediment had been deposited into the lake.

In January 2002, the Homeowners Association filed suit in the Superior Court of Cobb County against the Barzegars, Escex, and the Tabatabais contending they had caused silt, sediment, and storm water runoff to come from their construction sites and into the lake. In

---

[1] Several other companies were involved in the construction of the Tabatabai home, but for the ease of description, Williams Rhodes, Inc., is the only name relevant for the court's purposes.

March 2003, the Tabatabais filed a third-party complaint against William Rhodes, Inc., bringing that company into the state court litigation.

The Barzegars and Escex claimed that an insurance policy issued by Owners provided coverage for the state court litigation. Owners filed its first federal action on July 22, 2003, contending that it did not have a duty to defend or indemnify the Barzegars and Escex for the type of damage alleged. That case was styled as *Owners Insurance Company v. Chadd's Lake Homeowners Association, Inc.; Reza Tabatabai; Zahra Fakhrabadi, et al.*, Civil Action No. 03-CV-2050-WSD ("*Owners I*"). In an order dated December 28, 2004, Judge William S. Duffey, Jr. granted Owners' motion for summary judgment and held that the insurance company did not have a duty to defend or indemnify the Barzegars and Escex under the term of the insurance policy issued to Escex.

Owners issued a separate insurance policy covering William Rhodes, Inc. On September 15, 2003, after Owners had already filed its complaint in *Owners I*, Rhodes requested to have Owners defend it and indemnify it against the causes of action in the state court litigation. Owners provided Rhodes with a defense beginning in October 2003. Thereafter, however, on February 20, 2004, Owners attempted to amend its complaint in *Owners I* to add a declaratory judgment against William Rhodes, Inc.

Rhodes opposed Owners' motion to amend arguing *inter alia* that Owners had unduly delayed in bringing the amendment and Rhodes would be prejudiced by the amendment. In an order dated October 13, 2004, Judge Duffey denied Owners' motion to amend its complaint

3

finding that it was untimely. Judge Duffey also noted that the amendment would create "an entirely new cause of action." *See Owners I* Order, dated October 13, 2004, at 7. Judge Duffey pointed out, however, that "in opposing this motion and seeking to move this case forward, Rhodes assumes the risk of having [to] defend a separate declaratory judgment action to determine Owners' coverage obligations under the policy issued to Rhodes." *Id.* at 5 n.3.

As Judge Duffey anticipated, after being denied the opportunity to add the Rhodes' insurance policy to the *Owners I* declaratory judgment action, Owners filed the instant suit on February 18, 2005, seeking a declaration that it did not have a duty to defend or indemnify Rhodes for the damage to Chadd's Lake alleged in the state court action.

### B.    Contentions

Defendant contends that Plaintiff cannot bring this declaratory judgment action because it had the opportunity to raise it in the initial federal litigation and did not. Thus, Defendant argues, it is barred under the doctrine of *res judicata*. Plaintiff responds that *res judicata* does not apply in these circumstances because the insurance policy at issue in *Owners I* was that issued to the Barzegars and Escex Company, Inc., while the instant lawsuit surrounds the separate insurance policy issued by Owners to William Rhodes, Inc. Plaintiff further contends that it owes no coverage under the Rhodes policy because the damages sought in the underlying suit arise from acts that were expected and intended, and arise from a request that Rhodes respond to the silt, sediment, and storm water runoff, which are pollutants excluded from coverage under the policy.

4

**II.     Discussion**

    **A.     *Res Judicata*[2]**

"*Res judicata* or claim preclusion refers to the preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit." *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986).[3] There are four elements to *res judicata*: "(1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases." *Id.*

Here, the parties agree that the first three elements are satisfied. As to the fourth element, under *res judicata*, "the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial." *Olmstead v. Amoco Oil Co.*, 725 F.2d 627, 632 (11th Cir. 1984) (quotation and citation omitted). "The bar extends not only to the precise legal theory presented in the previous litigation, but to all

---

[2] Although at times Rhodes has referred to collateral estoppel (issue preclusion) in its briefing, *res judicata* is the applicable theory here. Collateral estoppel "forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). There is no dispute that the scope of the insurance contract between Owners and Rhodes was never decided in *Owners I*.

[3] The federal common law of *res judicata* determines the preclusive effect of a federal court judgment in a subsequent federal court case. *Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir. 1989).

legal theories and claims arising out of the same 'operative nucleus of fact.'"  *Id.* (quotation and citation omitted).  The court must determine, then, whether Owners' declaratory judgment action against Rhodes with respect to Rhodes' insurance policy could have been raised in *Owners I* which litigated to conclusion *only* on the duties owed by Owners to Escex under Escex's policy.

The court in *Manning v. City of Auburn*, 953 F.2d 1355 (11th Cir. 1992), addressed whether a claim could have been brought in prior litigation.  There, the plaintiff, an employee of a fire department, had filed an employment discrimination suit against the city based on a denial of benefits.  The plaintiff previously had not opted out of a class action suit alleging discrimination in the department.  She had, however, been dismissed with prejudice from that suit because she did not allege any damages.  Defendants filed a motion to dismiss her later filed individual complaint contending she should have raised these claims during the class action.

The court of appeals determined that the plaintiff could not have brought those claims in the original class action because it was not until there was a change in the chief of the department (after the initiation of the class action) that the plaintiff contended she had been discriminated against.  The court rejected the argument that the plaintiff should have supplemented her claims in the class action suit pursuant to Federal Rule of Civil Procedure 15(d).

6

> The scope of litigation is framed by the complaint at the time it is filed. . . . [W]e do not believe that the res judicata preclusion of claims that "could have been brought" in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation. Instead, we believe that, for res judicata purposes, claims that "could have been brought" are claims in existence at the time the original complaint is filed or claims *actually* asserted by supplemental pleadings or otherwise in the earlier action.

*Id.* at 1360 (emphasis in original).

Here, as the court described above, Owners did not bring a declaratory action on the Rhodes policy in *Owners I*, filed on July 22, 2003, because Rhodes had not yet asked for Owners to defend it in the state court litigation. Rhodes did not ask for a defense and coverage until September 15, 2003. After that, Owners did seek to amend its complaint, but that motion was denied by Judge Duffey under a Rule 15 analysis. The fact that Owners' motion to amend was denied after Rhodes' opposition to it does not create a windfall for Rhodes, particularly where Judge Duffey specifically warned Rhodes that its opposition to the amendment would likely mean that Rhodes would have to assume the risk of defending a separate declaratory judgment action. Thus, the court finds that Owners' declaratory judgment under Rhodes insurance policy was not a cause of action that could have been raised in *Owners I*.

Alternatively, the court also determines that the Rhodes policy and the Escex policy do not constitute the same causes of action. "The principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case." *Durbin*, 793 F.2d at 1549. It is true that the construction of residences for the Tabatabais and

7

Barzegars allegedly led to the polluting of Chadd's Lake and the underlying state suit. However, Rhodes' right and Owners' duty arise out of the insurance policy Owners issued to Rhodes, while Escex's right and Owners' duty to it arise out of the insurance policy Owners issued to Escex. Because these two causes of action are different, it would not be appropriate to apply *res judicata*. *See also Owners I* Order, dated October 13, 2004, at 7 (Judge Duffey noting if Owners added the Rhodes insurance policy claim, it would create "an entirely new cause of action"). The fact that the policy issued to Rhodes is substantially identical to the policy issued to Escex does not change that conclusion. Owners has no duty to Rhodes under the Escex policy, and Rhodes has no rights under the Escex policy.

Because the court concludes that *res judicata* does not bar Owners' suit here, the court must next consider Owners' motion for summary judgment as to whether it owes a duty of defense or indemnification to Rhodes.

### B.     Policy Coverage

Owners argues that it owes no coverage under the Rhodes policy because the damages sought in the underlying suit arise from acts that were expected and intended, and arise from a request that Rhodes respond to the silt, sediment, and storm water runoff, which are pollutants excluded from coverage in the policy. Rhodes did not respond to this aspect of Owners' motion for summary judgment. Particularly in light of the fact that Rhodes has not responded to Owners' arguments on these points, the court will not retread ground already considered by other courts. *See*, *e.g.*, *Owners I*, Civil Action No. 03-CV-2050-WSD, Order,

8

dated December 28, 2004 (granting Owners' motion for summary judgment because silt and sediment excluded "pollutant" and event not "occurrence" under the policy because it was precipitated by an intentional act).

The terms of the policy issued to Rhodes specify that coverage applies only to an "occurrence" as defined by the policy. "Occurrence" is defined as an accident. The policy does not apply to "[b]odily injury or property damage expected or intended from the standpoint of the insured." Thus, courts have held that any act intentionally undertaken by the insured – such as constructing a residential home – is not an "occurrence" under the policy. *See*, *e.g.*, *Allstate Ins. Co. v. Grayes*, 216 Ga. App. 419 (1995) ("An accident refers to an unexpected happening rather than one occurring through intention or design."); *Winters v. Reliance Standard Life Insurance Co.*, 209 Ga. App. 369, 370 (1993) ("In Georgia there is a very definite distinction between accidental injuries and injuries resulting from accidental means. Where an injury is unexpected but arises from a voluntary action it is an accidental injury, but for an injury to result from accidental means, it must be the unexpected result of an unforeseen or unexpected act which was involuntarily and unintentionally done.").

Finally, the policy does not apply to "[a]ny loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of pollutants." Pollutants are defined as "any solid, liquid, gaseous or thermal irritant or contaminant." Silt, sediment, and storm water runoff are considered "pollutants" under this

9

AO 72A
(Rev.8/82)

definition. *See Owners Insurance Company v. Lake Hills Home Owners Association, Inc.*, 57 Fed. Appx. 415 (11th Cir. 2002) (unpublished opinion).

For the foregoing reasons, the court finds that the Owners' insurance policy does not cover the circumstances alleged against Rhodes in the underlying state court action and GRANTS Plaintiff's motion for summary judgment [38-1].

**III.     Conclusion**

The court GRANTS Plaintiff's motion for summary judgment [38-1]

**IT IS SO ORDERED** this 30th day of May 2006.

                                                      s/ J. Owen Forrester
                                                     J. OWEN FORRESTER
                                    SENIOR UNITED STATES DISTRICT JUDGE